# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 17-353-1 |
| | : | |
| JESUS SOTELO-SOSA | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Jesus Sotelo-Sosa, through counsel undersigned, files this memorandum in aid of mitigation at sentencing. Given the particular facts and circumstances of this case, the defense respectfully suggests that a sentence at the low end of the guideline range would best fulfill sentencing goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a).

Mr. Sotelo-Sosa's personal history and prior contacts with immigration is somewhat accurately summarized in the presentence investigation report (PSR).[1] As noted in the report, Mr. Sotelo has been previously prosecuted and convicted for illegally returning to the United States. The Presentence Investigation Report concludes the total offense level is 10, Criminal History Category IV, which yields a range of 15 to 21 months (PSR ¶60). The defense has no substantive objections to the report and the guideline calculations therein. The PSR has identified upward departure and upward variance bases for the Court's consideration and the government has endorsed an upward variance. For the reasons stated below, the defense opposes

---

[1] The report indicates Mr. Sotelo's recitation of his upbringing in Mexico is inconsistent with an earlier report. Mr. Sotelo has explained that his family's financial situation fluctuated and that he was not trying to be deceptive.

a sentence above the advisory range and any such sentence would be greater than necessary to accomplish the goals of sentencing.

## I. MR. SOTELO'S PERSONAL HISTORY

Mr. Sotelo first came to the United States when he was just 17 years old. He grew up in Acapulco, Mexico to parents Jesus Sotelo Garcia and Estella Sosa. Mr. Sotelo's father lives in Acapulco and works as a truck driver. His mother is deceased. Mr. Sotelo married Maria Trujillo in 1990. In 1991, he was convicted of a drug offense and eventually removed to Mexico in 1998. Mr. Sotelo and Ms. Trujillo separated in 2004. They have four adult children, all of whom live in Norristown.

Mr. Sotelo did not attend school as a boy and is illiterate.[2] In spite of this handicap, Mr. Sotelo has been employed for many years, mostly as a laborer. Mr. Sotelo has worked for several different landscaping and construction companies. Counsel undersigned spoke to Mr. Sotelo's girlfriend, Christa Kincaid (See PSR ¶ 44). Ms. Kincaid, who lives in Norristown, Pennsylvania, has known Mr. Sotelo for many years but began a relationship with him when he returned to the United States in 2015. When asked to describe Mr. Sotelo's work history, Ms. Kincaid indicated Mr. Sotelo is a "very, very, very hard worker." Ms. Kincaid indicated Mr. Sotelo often worked from 7:00 in the morning until 8:00 at night, doing construction, landscaping and snow removal. Mr. Sotelo rented a room in a house in Norristown with other day laborers but sometimes stayed with Ms. Kincaid and often gave her money toward household expenses. She described Mr. Sotelo as a generous man. While she would like to eventually relocate to Mexico with Mr. Sotelo, at present, it would not be possible given her

---

[2] Counsel undersigned and a Community Defender investigator spoke to Mr. Sotelo's girlfriend, Christa Kincaid by telephone on December 26, 2017. Ms. Kincaid verified that Mr. Sotelo is unable to read or write in Spanish or English.

daughter's age, her schooling needs and other circumstances. She did not rule out relocating to Mexico when her daughter is older.

Mr. Sotelo is 42 years old. He has several convictions decades old. The most serious offenses occurred 21 and 26 years ago. It appears Mr. Sotelo was still a minor when he was arrested for possession of a sufficient amount of cocaine to warrant a felony sales conviction. (PSR ¶25). There is no evidence Mr. Sotelo has engaged in this type of serious conduct since those convictions took place. Admittedly, Mr. Sotelo has returned to the United States illegally. He has been charged and pled guilty to illegal reentry twice in this district. His punishment for those two offenses was serious and harsh. Mr. Sotelo was sentenced to 41 months in 2004 and 50 months in 2010.[3]

The defense respectfully asks the Court to consider a sentence at the low end of the range, in spite of upward departure and upward variance arguments identified in the PSR and advocated by government counsel. Mr. Sotelo has previously served two somewhat lengthy prison sentences for the identical nonviolent offense. The defense acknowledges Mr. Sotelo returned in spite of serving a lengthy prison sentence. The motivation for Mr. Sotelo's reentering the United States is, simply put—steady employment with decent wages. Mr. Sotelo has been successfully employed each time he has returned, in spite of being illiterate. This says more about his work ethic and character and less about any sinister motive to commit crime, apart from returning illegally. Nevertheless, he is very much aware that prosecution of those who illegally return to the United States is now a government priority, more so than when he entered the United States in 2015.

---

[3] Paragraph 28 of the PSR indicates Mr. Sotelo was sentenced to 43 years on Criminal No. 03-748. Counsel undersigned believes this is a typographical error as the criminal docket indicates the sentence imposed was 43 months.

## II. THE SENTENCING GUIDELINES AND OBJECTIONS TO AN UPWARD VARIANCE OR DEPARTURE

The defense agrees with the final guideline calculations in paragraph 60 of the report. The report identifies two bases for a sentence above the guideline range for the Court's consideration (PSR ¶¶73&75). The arguments put forth for a sentence above the range are not persuasive and not applicable in this case.

### A. Upward Departure is Not Warranted and is Not Supported by the Evidence

Paragraph 73 argues a basis for an upward departure is the fact that two prior offenses did not receive criminal history points because they were too remote.[4] The report refers to Application Note 5 of U.S.S.G. §2L1.2. Mr. Sotelo's prior convictions justifiably did not receive criminal history points.[5] Mr. Sotelo was just 17 years old at the time of his first offense and 22 years old when he was convicted of sexual battery.[6] He is now 43 years old. The facts surrounding the drug conviction appear to indicate Mr. Sotelo was not arrested in the act of selling drugs but possessed a sufficient quantity to demonstrate an intent to sell. There was no evidence of violence or other aggravating factors associated with that drug offense. Mr. Sotelo received a sentence of two months incarceration which could be indicative of a more minor role,

---

[4] Paragraph 73 did not identify the offenses but presumably the report is referring to the convictions in paragraphs 25 and 26.

[5] Application Note 5 states: There may be cases in which the offense level provided by an enhancement in subsection (b)(2) or (b)(3) substantially understates or overstates the seriousness of the conduct underlying the prior offense, because (A) the length of the sentence imposed does not reflect the seriousness of the offense; (B) the prior conviction is too remote to receive criminal history points(*see* §4A1.2e); or (C) the time actually served was substantially less than the length of the sentence imposed for the prior offense. In such a case, a departure may be warranted.

[6] California sexual battery is defined as (a) Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery.

a small quantity or some other factor warranting leniency.

According to the report, there was no factual information available for the sexual battery conviction (PSR ¶26). Mr. Sotelo was 22 years old when convicted of that offense and was sentenced to a year in jail. Arguably, in his two prior reentry cases, when Mr. Sotelo's offense level was increased by 16 levels for a prior drug trafficking offense, such a drastic increase resulted in an "overly severe" punishment.

Mr. Sotelo's advisory range in this case is a result of several factors including wholesale and deliberately reached revisions the Sentencing Commission made to the reentry guideline (U.S.S.G. §2L1.2) in 2016. The Commission spent years collecting sentencing data to address the "overly severe" enhancement for certain prior felonies that existed prior to the amendment in 2016. (See Reason for Amendment 802 in Supplement to Appendix C).7

The Commission explained its reasoning for the revisions in the "Reason for the Amendment" section in Supplement to Appendix C. The Commission has revised §2L1.2 no fewer than fifteen times before revamping the guideline entirely. In the supplement, the Commission specifically addressed Application Note 5. (Supplement to Appendix C, page 158). The Commission discussed convictions which do not count for criminal history points and used the example of a *murder* offense as an example of a serious offense that might be considered as a basis for an upward departure (Supplement to Appendix C, at158) (emphasis added).

Mr. Sotelo's decades old prior offenses do not count for valid policy reasons and should

---

[7] The Commission indicated it engaged in a "multi year" study to address several concerns, one of which was the "overly severe" 12 and 16 level enhancements for prior offenses. The Commission noted that as a result, a large percentage of sentences imposed in 16 level enhancement cases were below the guideline range. Specifically, in 2015, only 29.7% of the defendants whose guidelines were a result of a 16 level adjustment, were sentenced within the range.

5

not be the basis of an upward departure or variance.

### B. Upward Variance is Unwarranted and Not Supported by the Evidence

The variance basis identified by the probation office in paragraph 75 and argued by government counsel, is not persuasive. The report indicates that a variance may be warranted because Mr. Sotelo faces a lower guideline range in this instance than what he previously faced. Mr. Sotelo's prior reentry convictions are adequately accounted for in the calculations. He received a four level upward adjustment to the base offense level for his prior illegal reentry conviction (PSR ¶16). He also received six criminal history points for his two prior convictions for reentry after deportation. Of more significance is the fact that the Commission's explanation for the amendment is silent regarding this precise scenario. Surely the Commission contemplated this guideline result during the years of data compilation and analysis. In fact, the Commission's data showed that the average defendant charged with illegal reentry has been removed 3.2 times and 38.1%, more than one third of the defendants, have prior convictions for illegal reentry. (Supplement to Appendix C, page 156).

An upward variance would create an unwarranted disparity by circumventing the Commission's revisions which were based on years of study and empirical evidence.

### III. APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. §3553(a)(1).

### A. The Nature and Circumstances of the Offense and History and Characteristics of Mr. Sotelo-Sosa

Mr. Sotelo's work history and his motive for returning to the United States weigh in

favor of a sentence at the low end of the range of 15 to 21 months. This is a nonviolent offense without indication of new criminal conduct.

### B. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

*1. To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Virtually all federal offenses are considered serious. What makes this offense less serious than other federal offenses is the following: This is a nonviolent offense. There are no identifiable victims in this case (PSR ¶17). There is no restitution owed. Mr. Sotelo has committed no other criminal offenses apart from returning illegally. His most serious convictions are remote, dating back more than twenty years. Arguably, various individuals have benefitted from Mr. Sotelo's return, including employers who were able to pay Mr. Sotelo without paying payroll taxes to the federal government.

A sentence at the low end of the range would be sufficient to promote respect for the law. Mr. Sotelo has been in custody since his arrest on May 31, 2017. If the Court imposes a sentence of 15 months, Mr. Sotelo will remain incarcerated for several more months.

The Court can also consider that defendants with immigration detainers are not eligible to participate in various prison programs. Mr. Sotelo has an immigration detainer which has several consequences. Mr. Sotelo is ineligible for a minimum security or prison camp designation. He will not serve any portion of his prison sentence in a residential reentry center (a halfway house) and it is unlikely he will be able to participate in various programs with the Federal Bureau of Prisons system. 28 C.F.R. § 544.51(b) ("Generally, inmates under orders of deportation, exclusion, or removal may participate in an institution's occupational education program if Bureau resources permit after meeting the needs of other eligible inmates"); 28

C.F.R. § 544.41(a)(3). Moreover, he will remain in custody for some period of additional time while awaiting deportation to Mexico.

> 2. *To afford adequate deterrence to criminal conduct.*

The PSR emphasizes that deterrence is a factor that warrants a longer sentence than what has been calculated under the recently revised guideline structure. Mr. Sotelo's advisory range is now lower than the range he faced in 2003 and 2010 for the same offense.[8] There is no support for the argument that because Mr. Sotelo received a greater sentence for this offense in the past, he should not be sentenced within the current guidelines. There is no empirical support for the proposition that a successive sentence imposed by a court must be harsher than a preceding sentence to accomplish the statutory purposes of sentencing. Such a robotic approach ignores the fundamental principle underlying federal sentencing: that a sentence should not be "greater than necessary" to accomplish the purposes of sentencing,[9] and that sentences should fit the offense and the offender, for each defendant and each case is unique, and a defendant sentenced years ago may be – as is true here -- a vastly different person from the individual at the bar of the court.

Similarly, there is no support for the proposition that longer sentences provide additional deterrence. In fact, empirical studies, including a study commissioned by the Department of Justice, have found no support for this assertion.[10]

---

[8] In 2003, Mr. Sotelo's guideline range, which was calculated prior to *United States v. Booker*, was 41-51 months. In 2010, his advisory range for the same offense was 57 to 71 months.
[9] 18 U.S.C. § 3553(a).
[10] *See*, National Institute of Justice, Five Things About Deterrence (May 2016) *See also e.g.*, CESARE BECCARIA, ON CRIMES AND PUNISHMENTS AND OTHER WRITINGS 63 (Richard Bellamy, ed.; Richard Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as a Market System*, 12 LEGAL STUD. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison*, *in* CRIME 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin &

        *3.       To protect the public from further crimes of the defendant.*

Mr. Sotelo poses little threat to the public. Following completion of his sentence, he will be returned to immigration custody for deportation. There is no evidence of new criminal conduct apart from the instant offense. Protection of the public is of diminished concern in this case.

## IV.   **CONCLUSION**

Based on the above reasons, the defense respectfully requests the Court impose a sentence at the low end of the advisory range.

                                                Respectfully submitted,

                                                */s/ Maranna J. Meehan*
                                                MARANNA J. MEEHAN
                                                Assistant Federal Defender

---

Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*, 39 CRIMINOLOGY 865 (2001); Michael Tonry, *The Functions of Sentencing and Sentencing Reform*, 58 STAN. L. REV. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about Criminal Deterrence?*, 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity.").

# CERTIFICATE OF SERVICE

I, Maranna J. Meehan, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of the Defendant's Sentencing Memorandum, by Electronic Case Filing and hand delivery, upon Paul L. Gray, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

*/s/ Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

Date:   January 8, 2018